Good morning, Judge Hogg, and good morning, Judge Stucco. My name is Robert Bastian. I'm here with my law partner and co-counsel in the underlying case, Dr. Marina Ardini. We're pleased to have Dr. Sandhya Sundaram. May it please the Court, I'd like to reserve five  JUSTICE KENNEDY All right. Keep track of your own time. ROBERT BASTIAN Okay. Thank you. Discretion. The word discretion, as it appears in the Civil Rights Act that gave rise to the statute, we know it's a very specific term of art because Congress, when they passed that statute in both the House and the Senate hearings beforehand, said that we're adopting the case law that came before and some of the case law that the Supreme Court had overruled. So we know that discretion was meant to be very specific in terms of this statute. And what Congress intended was that generally when you have a prevailing party in a Section 1983 case, as we have here, we have a classic prevailing party, that absent extraordinary circumstances, they're going to be entitled to their attorney's fees. They're going to be entitled to the attorney's fees that are related to what caused them to be the prevailing party. And as a result of that, when the Supreme Court first passed on the statute and gave guidance to the lower courts in Hensley v. Eckerhart, they were drawing on that legislative history and interpreting the statute, and they basically set up a two-part step, two-part test to give guidance to the courts. And what it said is that first you're going to look to see whether or not the causes of action that the plaintiff prevailed on, that he succeeded on, and the ones that he didn't succeed on are related to each other. And if they are related to each other, and he receives substantial relief, then there's a presumption that he's going to be recovering for all that effort expended. Because after all, you don't always prevail on all your causes of action, but you have an obligation as an attorney to pursue all those related causes of action, which is exactly what happened here. Now, it's absolutely clear that a plaintiff received substantial relief in this case because he received $20,000. The entire lawsuit, the entire core of facts that he went to trial on involved a two-hour detention that occurred in his clinic, in what was his clinic, in which he alleged that he was abused during those two hours. And it's pretty clear that the jury agreed that he was abused, otherwise they wouldn't have awarded $20,000, which by anybody's reckoning has to be considered a substantial award. What the trial court did below when the plaintiff received $20,000, and I apologize, I don't want to pull you off point, but the amount of money that you're actually asking for this was like over $300,000, wasn't it? It was slightly under $300,000, and there was a very good reason for that. This was a very difficult case to prove. And we could not prove what took place within that two hours without discussing what took place outside the court. Now, I think even both sides admitted at trial that the outside context, what was going on in the background outside that clinic was necessary to give background and guide the jury on what took place during those two hours. Be that as it may, it wasn't always plaintiff that was trying to expand the case. Sometimes it was plaintiff that was trying to narrow the case. And let me give you a very clear example. Plaintiff submitted 20 motions in Lemonade to try to narrow the evidence in this case, and the district court decided not to rule on any of those, which meant that plaintiff had to be prepared on all those issues, which meant that we had to depose all those witnesses and all those witnesses that came in. And some of those witnesses, many of those witnesses were brought by defendant. But didn't the district court judge, you won on the issue of whether it was an interrelated claim, so you got at least partial compensation for those, did you not? We won on the first step, yes, that it was an interrelated claim, but then we only got partial instead of full compensation, because on the second step he took it away. And the problem that we're having with the way the court did that is he took it away on essentially the same grounds that he already ruled in plaintiff's favor on the first step. In other words, in effect, de facto, what he said is, because you didn't win on the related claims, now I'm going to cut your fees in half. And that was unfair. Let me ask you another question, because it wasn't clear in my reading of this, and it might be in there, and I may have omitted it. You got an offer of settlement under the federal rules at some point, which, as I understand it, the other side said was of about $30,000. When did that offer of settlement come forth? I can't remember the specific day, but that offer came forward prior to the trial. You don't know how long prior to the trial? Off the top of my head, I don't. It didn't seem like an important issue, and here's why. Because at that point, the attorney's fees had already overwhelmed the amount of the offer, so it wasn't like they beat the $30,000. It wasn't even close. That was $30,000, including attorney fees and the whole works? That's exactly right. And that's why the timing doesn't seem that significant, because at that point, we'd already gone through multiple motions. We'd gone up to the Ninth Circuit. We had come back. We had done a number of depositions, and the attorney's fees, the amount of litigation at that point, had overwhelmed what that amount was. Now, if that settlement offer had come early in the litigation, it would have been welcome at that point, but not at that point, where even costs at that point were overwhelming that offer. And using the calculation, the judge, though, at the trial level, gave you the full request of your hourly rate. He reduced the hours. That's right. But he gave you the full request of your hourly rate. That's right. And the hours that were ultimately reduced were not very great, as I recall. Were they? He cut the hours in half. I'm sorry. I misspoke. In doing the calculation, he disallowed some hours, saying these were duplicative or unnecessary. Right. But those weren't very great. Well, every hour at $300 an hour, I think, is real and substantial. And for example, I'll give you one example where he cut, and I would say it is important, and it's not something that should be dismissed as just a minor addendum to this. Prior to him, prior to the district court issuing an order saying that basically he would only allow one attorney at each deposition, we had already taken some depositions in Santa Barbara in which there were on occasion, when plaintiff was deposed, we only had one counselor. But when we were deposing the defendants and other witnesses, there were occasions where each defendant had two attorneys. So you have four attorneys in the room. You have the witness. You have the other party. You have the plaintiff. You had me. You had co-counsel. And sometimes you had witnesses, and that would bring in another attorney. You're talking enormous expenditure of time and effort here. And what Ms. Deany was doing was she was managing the paper. This was really heavily paper intensive. And it actually flowed much faster that way than it would have if beforehand I, with co-counsel, sat down and made copies of each of the sheets and prepared beforehand, because that, in effect, would have been eating up hours, too. As it was, I think we did everybody a service, and we're more efficient by doing it that way. Now, after we did that, the Court came down with an order that said only one attorney at each deposition, and we said, yes, but in this particular case, A, we didn't know about the order, and, two, in this particular set of circumstances, it was reasonable. After all, we only had one attorney to defend him. And the Court never really ruled on that. These things are important to plaintiffs that are trying to make a living. But understandable. But in fairness, isn't the general rule that you try to have one attorney at each deposition, and the burden is really on counsel to show the justification for two? I've run into this in my past practice where, as a mediator, I'm the one working hardest, and I have the $150-an-hour associate and the $350-an-hour partner sitting in the corner. And I don't mean that. I'm not suggesting in any way in this case. I'm just giving an example of what sometimes is viewed by judicial officers as a situation where costs might be cut a little bit differently. In this case, isn't it generally understood that you would have one attorney except where needed? And what you're saying is it was needed in this case. Except where needed. In this case, what I would suggest is we met that burden. And where you have a situation where a court issues an order afterwards, that suggests that this is a hard and fast rule, and then doesn't address or listen to the exception that we're citing in that particular case, then we haven't really been heard, and we haven't been treated fairly under the circumstances. At the very least, you should address whether or not what we have said is accurate and true and may not be the exception to what apparently from the court's order is a hard and fast rule, which isn't really exercising discretion. It's actually making a separate sub-code of federal civil procedure rule the way it's set up there. So that's why that causes us concern. Obviously, the fact that half the attorney's fees were cut causes us greater concern, and the circumstances under which he cut it is what causes the concern. Because in this particular case, we went to trial on a Fourth Amendment claim and a Fourteenth Amendment claim. One's objective reasonableness. The other is subjective malice, racial animus. We prevailed on one, but we didn't prevail on the other. The first part of the test says, are those claims related? Of course they're related. Is the fact that we got $20,000 on one and not the other substantial relief? Yes, we prevailed. We established that his rights had been violated. What's the point of having the first test if now you're going to turn around and say, oh, by the way, because you didn't, in effect, prove racial malice, you didn't succeed on your Fourteenth Amendment claim, now we're going to turn around and we're going to cut your fees in half? That violates the intent of Section 1988. It violates the structure that the Supreme Court gave, which is, in effect, the intent of Section 1988. And what it is, is the district court is abusing its discretion. He's got some personal feelings about this case that are creeping in that are overriding that test. Once that test was done, it was his burden to show that there are special circumstances in this case, and he hasn't shown that there are special circumstances that make us unworthy, because we were worthy. And if at that point you've established the first part of the test and then you're going to undermine the first part of the test, at the very least, you should explain what the special circumstances are that make it so unusual that now you're not going to follow what the presumption is of Congress in Section 1988 and is assumed in Hensley v. Eckerhardt. Now, he mentioned a couple other things. He said something about, well, beforehand there was a prior plaintiff and there was a malicious prosecution action. Both of those were dismissed before I and co-counsel came on as attorneys of record. So to cut the attorney's fees in half for that. Now, we did litigate it at the Ninth Circuit. It was part of the brief. And we didn't prevail on malicious prosecution action, but we did prevail on the Fourth and Fourteenth Amendment causes of action in the prior appeal. And from then on, from then on, after it was remanded, that's when discovery began. And all that discovery was necessary. I'd be hard-pressed to find out, you know, what witness that defendant called should we not have deposed beforehand in order to prepare for this trial. So, and I think in this particular case, it was very, very important for the jury to know what was going on outside that clinic. Because if you just took what was going on at the clinic at face value, you had defendants saying, boy, the dental examiner is just coming up on a trip from Tustin to check the sign on the door, and he invited him in, and it was all pleasant, and he was excited to show off his new clinic facilities, and it was uneventful, and it lasted 20 minutes. Well, you know the jury didn't accept that, because they awarded $20,000 in damage. And what the background was, what the background was, is that this guy was politically active, and one of his political rivals was on the phone to both of the defendants in this case, and was pushing hard for investigations. There was a completely unreasonable malicious prosecution going on on the outside, which they were using that inspection to walk around and look for the so-called toilet seat that formed the basis of a grand theft prosecution. Mind you, that was a landlord-tenant dispute that was never even pursued in civil court, but it was pursued by the same, on the defendant's recommendation, who was working in the Santa Barbara District Attorney's Office, for a grand theft, and when that was dismissed on probable cause, for probable cause grounds, he turned around and opened a file to try to prosecute Plaintiff Dr. Sundrum for perjury at that hearing, before they finally pulled the plug on that. If you understand those things, and you understand that that's what's going on in the background, then you understand why two hours, what happened in that clinic, may have been completely unreasonable, and that's what the jury did. In my closing argument, I specifically said to the jury, now we weren't in there, and we have a he said, they said regarding whether or not some racially charged things were said, but I specifically said to the jury, is this reasonable, given everything that you know about the relationship between these parties, is it reasonable that this person, who's supposedly recovering from cancer surgery, is driving up for Custin, for a three-hour trip, just to check the sign on the door, when you have a doctor who's working with him, trying to get the clinic open, just to see whether or not the dentist's name is on the door, and all of a sudden, you have the Santa Barbara District Attorney's Office, who just happens to be looking through portals, and door holes, and through hallways, looking for the toilet seat in the cabinet at the prior clinic, to support the criminal prosecution, who says, oh, no, I was just there to provide backup. You indicated you wanted to save five minutes. Thank you. Thank you very much. Good morning. My name is Michael Youngdahl. I'm a Deputy County Counsel with Santa Barbara County, and with me is David Adida. He is a Deputy Attorney General, and what we're going to do is split the argument, so I will be taking approximately ten minutes and focusing on the plaintiff of the jury fee award, and then Mr. Adida will handle the cross appeal on behalf of the defendant, Volante. Where I'd like to start is the standard of review, because that's what we just heard about at the very beginning. This is about discretion, and the only question your honors have to answer is whether or not this was a proper exercise of judicial discretion to award $130,000 approximately in attorney's fees when the plaintiff recovered $20,000 in compensatory damages, and as the trial judge found when he was looking at the facts after having sat through this trial, the trial judge found that the plaintiff's case was virtually gutted. So the question is, under that scenario, was it a proper exercise of discretion? Now, we don't have a dispute in this case about what the law is, so this really does focus in on fact finding. This is a classic discretionary call. In the Hensley, the standard that this court applies when it looks at a fee award and determines whether or not there's been an abuse of discretion, basically you look at, has there been a proper application of the law? Did the judge choose the right law? In this case, there's no dispute on that. The second question is, was there a clear error of fact finding? And the Thomas case, which is a recent Ninth Circuit case, in Thomas, the Ninth Circuit found that the second part of the Hensley test, which is really what we're arguing about here, that is the relative success test, that part of the analysis is where the bulk of the discretion lies. Well, that's our case. That's what Judge Raffitti did. He found in this case that the plaintiff, yes, was a prevailing party. Yes, Judge Raffitti found that the claims were interrelated, but when he went to the second step, which is this balance of how much the plaintiff, what the outcome was versus what was claimed, at that point, after having sat through the trial, heard all the witnesses, made the pretrial rulings and the rulings that he made during the trial, he made a discretionary call, a discretionary call that this court, under all the case laws, again, it's unquestioned. We're not talking about a legal dispute here, really. This court should defer to. Now, I say that, should defer to, because the record is replete. It's ample evidence that what this case was about, really, was a grand conspiracy, as Judge Raffitti put it. This case, this case was allegedly about a conspiracy in the Santa Maria Valley to, in essence, drive the plaintiff out of business, not just out of his business, but also out of his political activities. And the reason, supposedly, that was occurring was because of his race, his ethnicity, his political activities, his religion. That's why, allegedly, this conspiracy existed. And what happened, this two-hour detention, alleged, that was just one piece. Well, the two-hour detention, we can't say it's alleged, because that's found. Yes. It was found. That's right. That's right. So that's very true. And here's the advocate in me stepping forward. Unfortunately, I was one of the trial lawyers there, so yes. That definitely was found. And that's why Judge Raffitti ended up saying, well, $130,000 on a $20,000 verdict? Okay. And we are here, the county is here, Defendant Balsamo is here saying to this court. That decision was appropriate, given the facts that Judge Raffitti had. And as I was saying, this case really was, at bottom, about a conspiracy. And one way to see that is just to look at the amount of time and energy devoted to that conspiracy allegation. And the best, one of the best places to see that is actually in the plaintiff's opposition to the Rule 50 motion that the defense made, because, which is part of the excerpt of the record, and pages 70 and 71, there is a list of all the various ways that others conspired against the plaintiff. And there was effort, lots of effort. Days of deposition. The plaintiff's deposition took eight days, Your Honors. Eight days. About two hours? No. It took eight days because this was the grand conspiracy. And when the plaintiff testified at trial, his trial testimony, two-thirds of it was spent on other people, what was happening, the political activities. Even the opening brief to this court, when looking at the statement of facts, was about five pages long. One page, the five pages, it was about what happened in the detention. The rest of it was about political activities, racial animus, et cetera. None of which, ultimately, the plaintiff was successful proving. So at bottom, as I said, what this is about is an exercise of discretion. And certainly $130,000 is fair compensation in a situation where the plaintiff is making a claim, has actually demanded just short of $300,000, has alleged a grand conspiracy. And in fact, as the trial judge found, basically what happened is the jury decided that these two individual defendants had been overzealous for two hours during one day of a lengthy investigation. And unless there are questions, Your Honors, I would submit. All right. Thank you. Thank you. Good morning, Your Honors. David Adhido, DAG's office, on behalf of Appellee and Cross-Appellant Valencia. The reason why we filed a cross-appeal is obviously we're in disagreement with the district court's finding. Could you keep your voice up a little bit? Sure, absolutely. We're in disagreement with the trial court's finding that all of the claims that were brought in this litigation were interrelated. And before I speak about this specific issue, I would like to put it in context into what was the claim that actually prevailed. And the best way for me to do that, Your Honors, is to cite from the pre-trial conference order, and that is found on page 1219 and 1218 of the record. And the dispute with respect to the Fourth Amendment claim was with respect to the importance of consent. And in the document it is stated, consent is an evidentiary fact which will help the plaintiff be carefully tailored to its underlying justification as required by the Fourth Amendment. What happened was that during closing argument, the plaintiff's attorney made the following statement. The two of them went to Dr. Sundaram's house, and Valenti identifies himself as an investigator for, obviously, the state. He knows that, and he tells them that this is Dennis Balsamo. He doesn't identify that he's with the Santa Barbara district attorney's office. And neither does Dennis Balsamo. He doesn't identify that he's with the district attorney's office. Well, why is that? Because if the clinic is up and running, a dental board investigator has the power to conduct an administrative search. He can walk in and he can conduct a search of the premises for items that are related to dental business. The one thing he can do is he can bootstrap onto that and use those powers to go in and conduct a search of a crime. For that, you still need a search warrant. And for a search warrant, you go to a magistrate and you show why you have a need to be in that place and why that need is reasonable. And the magistrate authorizes that. At the end of his closing, the plaintiff's attorney looked at the jury and said, now, it's up to you to decide whether or not this man consented. But if nothing else, know this and know this, and it's so important, when he's got all this cunning down on him, when he's got all this hate, when he's got all of these people that are against him, that right that says that he doesn't have to consent to their entry, who says the law, the federal law, this is a part of our blood and a part of our history, says, I can draw this line here and you have to go to a magistrate, that's very important. Consequently, the jury was instructed with respect as to how it could find a defendant violated the plaintiff's Fourth Amendment right. And the jury was instructed that it could find such a violation if the plaintiff did not consent to the presence of the defendant in his business, and that he was there against his will. The jury instruction further said, in arguing that the plaintiff did not consent to the plaintiff's Fourth Amendment right.  plaintiff's Fourth Amendment right. The jury could find that there was a Fourth Amendment violation, but that Fourth Amendment violation was based on the allegation that the defendants did not appropriately identify themselves. That's what the jury instruction gave discretion to the jury. The jury could find, if it's just that fact, that, you know, if the defendants did not identify themselves, then there was a Fourth Amendment violation. And that's the argument that was advanced by the plaintiff. However, the plaintiff went further. He wanted punitive damages based on the fact that once the defendants were inside the business, they threatened to kill the plaintiff. They threatened to give him AIDS. They threatened to put fire to his body and that when the jury came back, they awarded $20,000. They did not award $20,000 because they found that during two hours, the defendant went around the business with syringes, threatening the plaintiff to give him AIDS. They didn't find, based on the finding of $20,000, that the defendants threatened the plaintiff to set him and his wife on fire. They didn't find, because they gave the plaintiff $20,000, that the defendants ---- Your argument was interrelated, was it not? I mean, they were trying to make the point that you should believe our client because of all this political problem. And so let me ask this. What's our standard of review as to the Court's finding that's interrelated? That's ---- it is a de novo review on the part of the court of appeal with respect to whether or not those are related claims. And the point that I'm trying to make ---- Why is that de novo rather than a clear error? It seems like it's largely factual, isn't it? Well, the law ---- I mean, there are certain directions that the district courts need to follow with respect to what is related and what is not related. And it's definitely not an abuse of discretion. In my understanding, Your Honor, you may be right, but my understanding is that it is a de novo review. And what I'm trying to say with respect to the relatedness of the claims is that in order to show the jury found a Fourth Amendment violation because it found that the defendants did not identify themselves properly, in order to prove that to the jury, there was no reason for the plaintiff to bring all that other extrinsic evidence. The defendants themselves admitted on the stand that that's what happened, that one of the defendants said, this is Balsamo, without identifying him. That was the direction that the district courts needed to follow with respect as to the thorough, basically, the terrorist actions of the defendants during the meeting in the dental office. Now, does someone who lets you in his business, who is duped into letting you into his business, does that justify the terrorizing of that person once you're inside of their business? Those two claims are completely unrelated except in forming a sequence. They are independent conceptually as well as in time. Evidence showing one form of misconduct, i.e., the ruse in getting inside the business, is not relevant in establishing that during the stay that they terrorized the plaintiff. But how do you unhook all of that and just simply focus in on the narrow facts which apparently led to a plaintiff's verdict? Well, it seems to me that the analysis starts with respect to the claim that prevailed. The claim that prevailed, according to the defense, is that the defendant did not properly identify themselves, and the jury found that, there's no question about that, and awarded $20,000. Now, this is the claim that they made. Did the claim that prevailed help in any way, shape or form? No. Did the claims that did not prevail help in any way, shape or form the plaintiff to prevail on this failure to properly identify themselves? And it seems to me that no. The only thing the plaintiffs needed to do is bring in the testimony from the defendant, and that's why we gave that Rule 68 offer of $30,000. Let me ask you this question. The Rule 68 offer that you gave was $30,000, including all claims. When did that come? At a minimum, Your Honor, it came at least six months before the trial, at the outside, a year. That's my best recollection. When were the majority of the fees incurred in the case? That would be before the Rule 68 offer was made, because that was made during a mediation conference, and by that time, all of the discovery had been completed. So isn't there a fairly strong argument to say that that Rule 68 offer is really sort of irrelevant for purposes of our discussion here, given the fact that it didn't include an offer of attorney fees? I mean, at this point, it's pretty clear that there was a $30,000 offer on the table, which apparently excludes fees, or includes fees, but it doesn't allow for a separate determination by the court. I mean, isn't it unreasonable on its face, given the circumstance, and therefore should not be considered by the judge who has the right to determine under a discretionary standard what the fees should be? My answer to that question, Your Honor, is that if you hold that the claims are interrelated, you're correct. The $30,000 means absolutely nothing, because by that time, a lot of the expenses had already been incurred. However, if you find that the claim the plaintiff prevailed on was not related to all of these myriads of other claims that were brought into the litigation, then it is relevant, because it would have taken less than a few hours of testimony to basically establish what the jury found, i.e., that the defendants did not identify themselves properly when they confronted Mr. Sundarren. It would have taken less than three hours. There was no need, in order to establish that claim, to bring in the conspiracy among everybody in Santa Cruz, the politicians, the mayor, the landlords, and everybody else. Counsel, your time has expired. Thank you, Your Honor. Proving the value of having second counsel, it had various proceedings. The Rule 68 offer was made on March 27 of 2003. To put that in context, the complaint was filed in August of 1998. The matter went up on appeal in January of 2004, and the trial was in August of 2003. That Rule 68 offer, which was $15,000, each defendant was made after discovery was complete at a final effort at a mediation. Counsel, do you agree with opposing counsel that the standard of review as to relatedness is de novo? Yes, I do. And even though that would be against my best advantage here on that point, discretion is in the statute. But because it's a term of what the Supreme Court has done, is they put legal tests together. And the cases that have interpreted that, including the Ninth Circuit cases that said, where you have a mechanical legal analysis, where that's an element of the determination, then the legal portion of that is reviewed de novo. So in that regard, yes, that would be reviewed de novo. In this particular case, I'm confident giving that concession, because basically what we had is we had four causes of action after the appeal. The four causes of action were this. There was a Fourth Amendment claim regarding the two hours in the clinic, the Fourteenth Amendment claim regarding the two hours in the clinic, and then also a Section 1985 claim regarding the two hours in the clinic, and a Section 1986 failure to prevent, all about the clinic. The core facts were the clinic. We weren't entitled to recover for anything other than the two hours. So to say that we didn't prevail on something else is simply mechanically wrong, and it can't be justified in the record. Those four causes of action are there as plain as day. In fact, the district court dismissed at mid-trial the two conspiracy causes of action. Now, I don't believe that he should have. And I'll give you a clue why we might have prevailed if that had been an issue in this case. You had two defendants who went to trial on an equal protection Fourteenth Amendment claim, and they were working together. You'd think that and enough would survive an early dismissal of the 1985. So we're going to appeal. Yeah. And there's a very specific reason why we're not challenging that. We won. We won. We got $20,000. The only reason I could go back to do that, I couldn't get any more compensatory damages for the same two hours because we asked for a full reward and we got it. What, in effect, I'd be doing is doing that in order to go after them for punitives too. Now, there. There's the one concession. We didn't get punitive damages in this case. That's all they can say that can justify supposedly reducing this award. But the case law says that is insufficient. Merely because you didn't get punitive damages, you had a substantial award. So how are you going to say, yeah, but you didn't get punitive, so we're going to cut you in half? That is so contrary to the intent behind Section 1988. And in terms of fairness, I heard a lot of equity arguments being made here about fairness. What's fair on an attorney's fee case in Section 1988 is to follow the legislative intent, to follow it slavishly, because that's where we're getting our cues. It was Congress's intent that confident counsel be attracted into cases like this. And I'd hate to have, you know, imagine in a future case saying, should I dismiss a related 14th Amendment claim with a 4th Amendment claim because otherwise my fees might get cut in half? That would inert to the client's disadvantage as well. But doesn't, but aren't you basically arguing that if you win on anything, you get everything when it comes to fees? No. I'm arguing that if we win, we get all our fees on related claims, not asking for anything more than that. And that is what Section 1988 gives us. If it was under, the example that was given in Hensley v. Eckerhart, and this was a pre-prison Reform Act case, was they had six claims against the prison. They were all conditions of confinement. And they said if, for example, they only won on maybe the mail issue, the mail was being improperly delivered. Under those cases, you'd expect the court to go back and divide it up, maybe one-sixth. You wouldn't get all the total fees. But they, if you read the language of Hensley v. Eckerhart, they specifically say this isn't a situation where you go back and cut the fees if every, if somebody got substantial relief, those are the words, substantial relief, on related claims. These are all related claims. We got substantial relief. We're requesting that the Court follow the intent of Section 1988. Roberts. Thank you, Your Honor.  Thank you, Your Honor.
judges: Hug, Wardlaw, Suko